UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:21-CV-00029-JHM

GREENHOUSE HOLDINGS, LLC                                                                    PLAINTIFF

V.

INTERNATIONAL UNION OF PAINTERS AND ALLIED
TRADES DISTRICT COUNCIIL 91                                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on International Union of Painters and Allied Trade District Council 91's (the "Union") Motion to Dismiss [DN 17] under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Dismiss is **GRANTED**. Also before the Court is Greenhouse Holdings, LLC's Motion to Vacate Arbitrator's Supplemental Award [DN 13] and the Union's Motion to Confirm Arbitrator's Opinion and Award and Supplemental Award [DN 19]. With respect to these motions, the Court requests supplemental briefing.

## I. BACKGROUND

Greenhouse Holdings, LLC ("Greenhouse") is a Missouri limited liability company with its principal place of business in Owensboro, Kentucky. It specializes in cutting and installing glass doors and windows. [DN 1 at ¶¶ 1, 7]. In 2017, Greenhouse members Dan Kinney ("Mr. Kinney") and Timothy Huff ("Mr. Huff") formed a new corporation, Clearview Glass and Glazing Contractors of Tennessee, LLC ("Clearview TN"), specifically to acquire the assets of Glass Contractors of Tennessee, Inc. ("Glass Contractors"), another glass company. [*Id.* at ¶¶ 8–10].

1

Prior to its acquisition, Glass Contractors was a signatory to a collective bargaining agreement ("CBA") with the International Union of Painters and Allied Trades District Council 91 (the "Union"). After Clearview TN acquired the assets of Glass Contractor's, Mr. Kinney signed a CBA renewing the agreement that previously existed between the Union and Glass Contractors. [*Id.* at ¶¶ 9, 14]. Upon the expiration of the CBA, the Union notified Mr. Kinney, of "Clearview Glass and Glazing Tennessee" that the CBA between the Union and his company was about to expire and the Union invited negotiations on a new Agreement between the Union and [DN 18, Ex. 16] The parties dispute the facts surrounding these negotiations. Mr. Kinney allegedly explained to the Union's representatives how Clearview TN—and not Greenhouse—would sign an updated CBA with the Union. [*Id.* at ¶ 13]. Greenhouse says the Union's representatives accepted this stipulation. [*Id.* at ¶ 13]. The Union disagrees. It maintains the parties never discussed keeping any of Clearview TN or Greenhouse's shops as non-union and doing so would "defeat the purpose of organizing and violate the express terms of the CBA which Kinney signed." [DN 18 at 5]. Still, the parties reached an agreement and signed a new CBA—the cover page stating it is between the Union and the "Nashville TN Glazing Contractors 'Area Q.'" [DN 18-4 at 2]. [1] Curiously, the name of the contractor, referred to in the CBA as the "Employer" was left blank in both the old and new agreement. [DN 18-3 at 2]; [DN 18-4 at 5]. But it was signed by the Union secretary-treasurer, Shawn Solner ("Mr. Solner"), and by Shane Reed ("Mr. Reed"), a manager of Clearview TN. [*Id.* at 35].

---

[1] The cover page of the original CBA indicated the agreement was between the Union and "The Clarksville Tennessee, Glaziers 'Area G' Clarksville, Tennessee and Vicinity Contractors." [DN 1-1 at 2]. The Union alleges that "Area Q" in the new CBA is a typo and that it should read "Area G." [DN 24 at 2 n.1]. Greenhouse correctly observes how "the CBA specifically does not identify an 'Area Q.'" [DN 22 at 3]. However, referring to Area G, Greenhouse incorrectly states that "only Tennessee counties [are] members of that Area[.]" [DN 22 at 3]. Under the second CBA, Area G includes several Kentucky counties. [DN 1-2 at 14].

On November 20, 2019, Mr. Solner, on behalf of the Union, sent a letter to Mr. Kinney advising that it had learned that Mr. Kinney did not consider its "Owensboro, KY, shop to be a signatory" to the CBA. [18-7 at10]. The letter sought information from Mr. Kinney, which was not provided. [*Id.*]. In February 2020, the Union filed a grievance against "Clearview Glass" with the National Labor Relations Board ("NLRB"). [DN 1 at ¶ 22]. That dispute alleged multiple CBA violations, including improper terminations, wage and benefit withholdings, and failure to provide bargaining information. [DN 18 at 6–7]. It was agreed to submit the grievance to arbitration. [DN 1 at ¶ 23]. The parties disagree which entities attended the arbitration. The arbitration award lists "Clearview Glass and Glazing"—the trade name for Greenhouse and Clearview TN—and the Union as the parties. [DN 18-2 at 2]. The Union states Greenhouse "cannot say that because its trade name was used for the grievance and arbitration that it was not a party to the arbitration." [DN 18 at 11]. However, the Union also acknowledges that when the CBA refers to "Employer," it refers to "Clearview Glass and Glazing Contracts of Tennessee, LLC." [DN 24 at 2–3]. According to Greenhouse, it "has never signed a collective bargaining agreement of any kind" and was not present in the arbitration. [DN 1 at ¶ 18]. Furthermore, according to Greenhouse, "Clearview TN . . . is and always has been a separate entity from Greenhouse." [DN 1 at ¶ 17].

The arbitrator's initial decision ordered Clearview Glass and Glazing to pay the Union's "Tennessee-shop employees" and "non-Tennessee shop employees." [DN 1 at ¶¶ 26–27]. A supplemental award further defined the exact amount the arbitrator awarded to the "non-Tennessee" employees. [*Id.* at ¶ 28].

Greenhouse seeks a declaratory judgment, asking this Court to find "Greenhouse is not a party to the [s]econd CBA and is not bound by its terms[.]" [*Id.* at ¶ 32]. It argues the

supplemental award order concerning "non-Tennessee shop employees" binds Greenhouse despite the fact that it was not a signatory to the CBA. [*Id.* at ¶ 29]. Accordingly, Greenhouse requests this Court declare the arbitrator's award "void and unenforceable" to the extent it applies to Greenhouse. [*Id.* at ¶ 33]. The Union seeks to dismiss this action through its Motion to Dismiss. [DN 17]. Additionally, Greenhouse moves to vacate the supplemental arbitration award, [DN 13], and the Union moves to confirm it. [DN 19]. The Court will address these motions in turn.

## II. THE UNION'S MOTION TO DISMISS

The Union's Motion to Dismiss requests the Court dismiss Greenhouse's Declaratory Judgment Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a clam on which relief can be granted. [DN 17 at 1].

The Union moves for dismissal of this case under both Rules 12(b)(1) and (6). [DN 17 at 1]. Rule 12(b)(1) provides a party may file a motion asserting "lack of subject-matter jurisdiction." Because "[s]ubject matter jurisdiction is always a threshold determination," *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), the Court must "consider the 12(b)(1) motion first, since the Rule 12(b)(6) motion becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Id.* "If the court determines that at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Even when the parties do not raise the issue, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may

raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Greenhouse's Complaint cites the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as supporting subject matter jurisdiction. [DN 1 at ¶¶ 3–5]. The first route, the Declaratory Judgment Act, cannot support subject matter jurisdiction. This statute "does not provide an independent basis for federal subject matter jurisdiction." *Michigan Corr. Org. v. Michigan Dept. of Corrs.*, 774 F.3d 895, 902 (6th Cir. 2014) (internal quotation marks omitted); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) ("Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."). Therefore, subject matter jurisdiction does not exist under § 2201.

The second route, the LMRA, is a bit more complicated. Section 301 of the statute states in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185. The parties agree this statute confers jurisdiction but disagree under what circumstances.

The parties cite conflicting authority in addressing whether Section 301 provides subject matter jurisdiction. The Union relies on Supreme Court precedent to argue an existing contract is a jurisdictional prerequisite under Section 301. *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653 (1998). *Textron* holds that Section 301, "[b]y its terms, confers federal subject-matter jurisdiction only over suits for violation of contracts." *Id*. at 656 (internal quotation marks omitted). On the other hand, Greenhouse cites the Sixth Circuit case

*Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009), and argues that the Sixth Circuit has found subject matter jurisdiction even when an employer asserts it is not bound by a CBA. The Union counters noting that *Textron* "has never been overturned." [DN 23 at 2]. Relying on *Textron*, the Union argues that the Court cannot exercise jurisdiction over the declaratory judgment action since Greenhouse maintains no contract ever existed between itself and the Union, let alone an alleged violation of the contract.

Factually, this case more closely resembles *Textron*. In *Textron*, a union filed a complaint against an employer, alleging the collective bargaining agreement was invalid, but not that it was violated. 523 U.S. at 655. The Court found the suit "obviously does not have as its 'purpose or objection' violation of any contract." *Id.* at 657 (quoting Section 301). "Because the Union's complaint alleges no violation of the collective-bargaining agreement, neither we nor the federal courts below have subject matter jurisdiction over this case under §301(a) of the [LMRA]." *Id.* at 661–62. Here, Greenhouse acknowledges the CBA exists, but only between Clearview TN and the Union. [DN 13-1 at 1]. Greenhouse does not argue any contractual violation—in fact, its main argument is that "Greenhouse is not a party to the . . . CBA and is not bound by its terms, and therefore could not have violated the terms . . . ." [DN 1 at ¶ 32]. In contrast, in *Winnett*, the Plaintiff retired workers alleged a contractual violation when the employer made unilateral changes to retiree medical benefits. 553 F.3d at 1008.

While *Winnett* clarified the law with respect to whether the existence or validity of a union contract is a jurisdictional prerequisite which must be proven before subject-matter jurisdiction can be found, *Textron* holds that Section 301, "[b]y its terms, confers federal subject-matter jurisdiction only over suits for violation of contracts." *Id*. at 656 (internal quotation marks omitted). Unlike the plaintiff workers in *Winnett*, Greenhouse here is not even alleging

6

that a contract exists. Greenhouse is not alleging that a violation of a union contract has occurred. The object of this declaratory judgment action is not to enforce a union contract, it is to avoid the reach of an arbitration award. Therefore, there is no subject matter jurisdiction under Section 301 over Greenhouse's declaratory judgment action.

Alternatively, Greenhouse argues diversity as a basis for subject matter jurisdiction even though its complaint fails mention it. 28 U.S.C. § 1332(a)(1), provides "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." *Id.* Federal courts have interpreted this statute to require "'complete diversity' of citizenship." *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990) (quoting *Strawbridge v. Curtiss*, 3 Cranch 267 (1806)). "[C]omplete diversity exists, only if each of the plaintiffs comes from a different State from each of the defendants." *Evanston Ins. Co. v. Housing Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017).

Greenhouse is a limited liability corporation. [DN 1 at ¶ 1]; [DN 13-2]. In the Sixth Circuit, "a limited liability company has the citizenship of each of its members." *Id.* Based on its Complaint, Greenhouse has at least two members: Mr. Kinney and Mr. Huff. [DN 1 at ¶ 1]. Greenhouse's pleadings do not state these individuals' citizenship. [DN 1]; [DN 13-1 at 2]. "When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company." *Delay*, 585 F.3d at 1005. Nevertheless, one supplemental document lists Mr. Huff's residency as Missouri. [DN 13-5 at 1]. As for Mr. Kinney, his Declaration only notes his office location as Kentucky, [DN 13-4 at 1]; other attachments list a second Kentucky address for Mr. Kinney. *See* [DN 13-9]. The Union also asserts that "[u]pon information and belief, Dan Kinney . . . is a resident of

7

Kentucky." [DN 23 at 4]. All this information indicates Greenhouse's citizenship for diversity jurisdiction includes, at a minimum, Kentucky and Missouri.

In two different pleadings, Greenhouse bases the Union's citizenship on "its principal office in Indiana" and "Tennessee." [DN 13-1 at 2]; [DN 20 at 4–5]. While these may be true, "an unincorporated association, such as a labor union or a partnership, has no separate legal identity so its citizenship, at least for the purposes of diversity jurisdiction, is the citizenship of each of its members." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994). The Union's citizenship may include Indiana and Tennessee, but it is not limited to them. According to the Union, it "has members that live throughout its geographic jurisdiction, including Kentucky." [DN 23 at 3]. Thus, the Union is also a citizen of Kentucky.

In short, Greenhouse fails to prove diversity jurisdiction. One of Greenhouse's members, Mr. Kinney, resides in Kentucky, and the Union has members in multiple states, including Kentucky. This overlap defeats complete diversity, [2] meaning the Court cannot exercise subject matter jurisdiction under § 1332. [3]

### III. MOTIONS TO VACATE OR CONFIRM THE SUPPLEMENTAL AWARD

The Union complains that Greenhouse's attempt to vacate a final arbitration award through a declaratory action is not proper and the only mechanism to do so is by filing a motion

---

[2] Because Greenhouse has not satisfied the complete diversity requirement, the Court need not address § 1332's amount-in-controversy requirement. This requirement is easily met; the disputed supplemental award ordered "the Company" to pay the "amount of $1,637,773.30."

[3] As an aside, in its motion to dismiss, the Union attempts to reclassify Greenhouse's Complaint as a violation of the National Labor Relations Act ("NLRA"), meaning the NLRB should have exclusive jurisdiction. [DN 23 at 4]. While it is correct that the NLRB would have exclusive jurisdiction over such a claim, this is not a "fair reading" of the Complaint as the Union alleges. [*Id.*]. "The well-pleaded complaint rule generally provides that the plaintiff is master of his complaint . . . ." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994). Greenhouse never references the NLRA, NLRB, or any unfair labor practices. *See* [DN 1]. The Court cannot agree that Greenhouse disguised these NLRA claims within its Complaint.

to vacate the award pursuant to 9 U.S.C. section 10, which Greenhouse has done. The Union has also filed a motion to confirm the arbitration award.

Initially, the Union alleges Greenhouse's Motion to Vacate is time-barred. [DN 18 at 15]. "Notice of a motion to vacate . . . must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Greenhouse filed its motion on May 19, 2021. [DN 13-1 at 15]. Whether this motion is timely depends upon which award date the three-month time limit began tolling. If the Court applies the initial award date of January 27, 2021, Greenhouse's motion falls outside three months and is time-barred. But, if the Court applies the supplemental award date of February 19, 2021, Greenhouse's motion is timely.

Under 9 U.S.C. § 12, the party moving to vacate must do so "within 3 months of the *final* award." *Warren v. Tacher*, 114 F.Supp.2d 600, 602 (W.D. Ky. 2000) (emphasis in original). The Sixth Circuit has deemed an award not "final" when the "arbitration panel issued an interim award resolving only the matter of liability," but retained jurisdiction to calculate damages. *Savers Property and Cas. Ins. Co. v. National Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 719 (6th Cir. 2014). This case resembles *Savers*. Even though the arbitrator's initial award ordered "[t]he Company . . . to pay to the Union the amount of underpaid wages and benefits due its non-Tennessee shop employees," [DN 18-2 at 16], it did not determine that exact amount until the supplemental award. [DN 18-15]. Therefore, the arbitration award became final on February 19, 2021. Greenhouse's filing comports with the FAA's three-month limitation.

The Court has wrestled with these motions for some time now and it still has questions. To begin with, in his Opinion and Award, the arbitrator found that Clearview Glass and Glazing was a signatory to the collective bargaining agreement. Throughout the award, the arbitrator refers to Clearview Glass and Glazing as the "Company" bound by the award. The problem with

this finding is that Clearview Glass and Glazing is simply a trade name used by two different entities—Clearview TN and Greenhouse. How can they both be signatories to the CBA?

From a historical perspective, it is clear that a Tennessee contractor, Glass Contractors, was a signatory to a collective bargaining agreement ("CBA") with the International Union of Painters and Allied Trades District Council 91 (the "Union"). After Clearview TN was formed, and it acquired the assets of the Tennessee company, Mr. Kinney signed a CBA renewing the agreement that previously existed between the Union and Glass Contractors. [*Id.* at ¶¶ 9, 14]. Upon the expiration of the CBA, the Union notified Mr. Kinney, of "Clearview Glass and Glazing Tennessee" that the CBA between the Union and his company was about to expire, and the Union invited negotiations on a new Agreement. [DN 18-16]. The parties dispute the facts surrounding these negotiations. Mr. Kinney allegedly explained to the Union's representatives how Clearview TN—and not Greenhouse—would sign an updated CBA with the Union. [*Id.* at ¶ 13]. Greenhouse says the Union's representatives accepted this stipulation. [*Id.* at ¶ 13]. The Union disagrees. It maintains the parties never discussed keeping any of Clearview TN or Greenhouse's shops as non-union and doing so would "defeat the purpose of organizing and violate the express terms of the CBA which Mr. Kinney signed." [DN 18 at 5]. Still, the parties reached an agreement and signed a new CBA—the cover page stating it is between the Union and the "Nashville TN Glazing Contractors 'Area Q.'" [DN 18-4 at 2]. [4] Curiously, the name of the contractor, referred to in the CBA as the "Employer" was left blank in both the old and new agreement. But it was signed by the Union secretary-treasurer, Mr. Solner, and by Mr. Reed, a

---

[4] The cover page of the original CBA indicated the agreement was between the Union and "The Clarksville Tennessee, Glaziers 'Area G' Clarksville, Tennessee and Vicinity Contractors." [DN 1-1 at 2]. The Union alleges that "Area Q" in the new CBA is a typo and that it should read "Area G." [DN 24 at 2 n.1]. Greenhouse correctly observes how "the CBA specifically does not identify an 'Area Q.'" [DN 22 at 3]. However, referring to Area G, Greenhouse incorrectly states that "only Tennessee counties [are] members of that Area[.]" [DN 22 at 3]. Under the second CBA, Area G includes several Kentucky counties. [DN 1-2 at 14].

manager of Clearview TN.  No evidence exists, that the Court is aware of, to show that Mr. Reed was a Greenhouse employee or that anyone associated with Greenhouse signed the CBA.  Yet the Arbitrator entered an award against "Clearview Glass and Glazing"—which arguably includes Greenhouse, a non-party to the CBA.  [DN 18-5 at 2].

If Greenhouse did not sign the CBA, the agreement's provisions—including those requiring arbitration of disputes—could not bind Greenhouse.  To the extent the arbitrator's award was intended to bind Greenhouse, such a conclusion would seem to exceed the arbitrator's authority under the CBA.  9 U.S.C. § 10(a)(4).  An award is legitimate "only so long as it draws its essence from the collective bargaining agreement."  *United Steelworkers of Am. v. Enter. Wheel & Car Co.*, 363 U.S. 593, 597 (1960).  An arbitrator exceeds his authority by determining "the rights or obligations of [a] non-part[y] to the arbitration."  *Nationwide Mut. Ins. Co.*, 330 F.3d at 846.

On the other hand, unlike Greenhouse, there seems to be no question that Clearview TN executed the CBA with the Union.  *See* [DN 1 at ¶ 16].  Not only does that agreement cover Clearview TN's own Tennessee shop employees, the language covers any other work performed by Clearview TN under the name of another.  Article XXV—titled "Preservation of Work"—states:

> If the Employer performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

[DN 18-4 at 23].

11

The Union repeatedly argues the arbitrator concluded the two shops were the same or that Greenhouse was a signatory to the CBA. [DN 17-1 at 3–4]. But, the arbitration award does not seem to go that far. While the arbitrator did ultimately award the "amount of underpaid wages and benefits due its non-Tennessee shop employees," [DN 18-2 at 15], there was no explicit discussion or findings about whether Greenhouse signed the CBA, whether the two shops were unionized, or whether one was the alter ego of the other. The arbitrator's few mentions of the Kentucky shop note that there were "two construction shops, one in Kentucky and one in Tennessee, employing glazers," [*Id.* at 2], and that the "employer maintained in opening statement that the Kentucky shop was at all times non-union while admitting that the Tennessee shop is a union shop." [DN 18-2 at 9]. The Union claims the arbitrator's award "draws its essence from Articles XXV and III of the CBA." [DN 24 at 4]. However, looking at the arbitration award, the arbitrator never discussed these clauses and did not even cite the former. [DN 18-2].

Yet, this silence does not seem to undermine the Union's position, at least with respect to Clearview TN. "Arbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers*, 363 U.S. at 598; *see also Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) ("Arbitrators are not required to explain their decisions."). Under the applicable standard of review, "courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramen Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir 2006). So long as the arbitrator's determination went to the "essence" of the CBA, the Court cannot second guess his reasoning. *United Steelworkers.*, 363 U.S. at 597. This case is complicated by the fact the arbitrator did not reveal his reasoning.

12

Despite the lack of explanation, it would seem appropriate to confirm the arbitration award against Clearview TN. The CBA's provisions establish arbitration as the preferred dispute resolution method when the parties cannot reconcile a grievance. [DN 1-1 at 7–11]. The issues covered in that arbitration, which were provided to Mr. Kinney prior to the meeting, concerned that agreement's provisions. Based on the contractual language, namely Article XXV, and the facts of this case, there is enough to support "a line of argument that is legally plausible and supports the award": that the arbitrator determined the CBA covered both Kentucky and Tennessee shops and that Clearview TN—the signatory to the agreement—would be liable for payment of CBA wages at both shops. *Merrill Lynch*, 70 F.3d at 421. Such an award would derive from the "essence" of the agreement that Clearview TN signed. *Misco*, 484 U.S. at 37–38. But, the Court questions whether the award can be confirmed against Greenhouse.

To sum up, the Court is considering granting Greenhouse's motion to vacate the award to the extent it purports to hold Greenhouse liable under the CBA, but confirm the award, including the damages awarded in the supplemental award, against Clearview TN. However, before it does so, the Court would like to hear additional argument from counsel.

**The parties shall meet and confer and advise the Court's case manager, Erica Skinner, at Erica_a_skinner@kywd.uscourts.gov, of several dates they can be available for oral argument to be held within the next 30 days.**

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Union's Motion to Dismiss [DN 17] Greenhouse's Declaratory Judgment action is **GRANTED**. Oral argument on Greenhouse's Motion to Vacate [DN 13] and the Union's Motion to Confirm [DN 19] will be set by separate order.


*Joseph H. McKinley Jr.* (signature)

Joseph H. McKinley Jr., Senior Judge
United States District Court

October 22, 2021

cc: Counsel of Record